NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-1024

(Serial  No. 76/342,048)

IN RE PRECISION CUTS, INC.

_____

DECIDED:  May 11, 2005

_____

Before NEWMAN, CLEVENGER, and GAJARSA, <u>Circuit Judges</u>.

GAJARSA, <u>Circuit Judge</u>.

The appellant, Precision Cuts, Inc., appeals the Trademark Trial and Appeal Board ruling regarding the proposed composite mark "PRECISION CUTS".  The trademark examiner ruled that the mark was generic for barbership services, and imposed a final disclaimer requirement.  The Board affirmed.  <u>In re Precision Cuts</u>, No. 76342048, slip op. (TTAB Jun. 30, 2004).  The Board's ruling is supported by substantial evidence, and we <u>affirm</u>.

I.

Precision Cuts, Inc. ("PCI") provides "hair care preparations" and barbering services.  On November 21, 2001, PCI filed registration application no. 76/342,048 for

the mark "PRECISION CUTS" as used with those services.  The application related to both the words "precision cuts" and certain stylized lettering.

The owner of a trademark used in commerce can apply to register the mark with the Patent and Trademark Office ("PTO").  See 15 U.S.C. § 1051.  Although the statute precludes registration of certain marks, see 15 U.S.C. § 1052, such exceptions do not extend to "the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce."  15 U.S.C. § 1052(f).  PCI sought to register its "PRECISION CUTS" mark on the basis of such secondary meaning under § 1052(f).

The examiner found that the term "precision cuts" was generic for "barbershop services."   In support of this conclusion, the examiner cited sixty representative examples among hundreds returned to a NEXIS search on "precision cut".  Under 15 U.S.C. § 1056(a), the examiner required PCI to disclaim the words in the application before he would allow the mark.  In response PCI disclaimed the word "cuts", but not the term "precision cuts" at issue.  The examiner refused to register the mark, and PCI appealed.  The Trademark Trial and Appeal Board ("TTAB" or "Board") affirmed.  In re Precision Cuts, No. 76342048, slip op. at 14 ("[T]he Examining Attorney has shown by clear evidence that these words are generic for applicant's services.").

PCI timely appealed.  This court has jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

II.

The court reviews de novo the Board's legal conclusions.  Hoover Co. v. Royal Appliance Mfg. Co., 238 F.3d 1357, 1360 (Fed. Cir. 2001).  Whether "precision cuts" is a generic term for haircuts or haircutting services, or whether the words have acquired distinctiveness, are factual issues.  See In re Oppedahl & Larson LLP, 373 F.3d 1171,

05-1024

1173 (Fed. Cir. 2004); Hoover, 238 F.3d at 1360; G.H. Mumm & Cie v. Desnoes & Geddes, Ltd., 917 F.2d 1292, 1294 (Fed. Cir. 1990). The court will affirm the Board's factual findings if they are supported by substantial evidence. In re Pacer Tech., 338 F.3d 1348, 1349 (Fed. Cir. 2003); Hoover, 238 F.3d at 1359. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938).

The statute provides that "service marks shall be registrable[ ] in the same manner and with the same effect as trade-marks." 15 U.S.C. § 1053. However, the statute does not permit registration of a trademark or service mark in generic terms. See 15 U.S.C. §§ 1052 (setting forth exceptions to registration). A generic term is one that is "common" and descriptive, as opposed to "merely descriptive". A generic term describes the genus of goods being sold. See In re Merrill Lynch, Pierce, Fenner, and Smith, Inc., 828 F.2d 1567, 1569 (Fed. Cir. 1987). Although a "merely" descriptive term can acquire secondary meaning to the consuming public, within 15 U.S.C. § 1052(f), a generic term cannot. Id. Instead, "[a] generic term cannot be registered as a trademark because such a term cannot function as an indication of source." Bellsouth Corp. v. DataNational Corp., 60 F.3d 1565, 1569 (Fed. Cir. 1995). "A generic term * * * describes a product generally, and cannot inform the public that the product has a particular source." Id. As this court has stated, "[g]eneric terms, by definition incapable of indicating source, are the antithesis of trademarks, and can never attain trademark status." Merrill Lynch, 828 F.2d at 1569.

The difference between a generic and "merely descriptive" mark thus turns on "whether members of the relevant public primarily use or understand the term sought to be protected to refer to the genus of goods or services in question." H. Marvin Ginn Corp. v. International Ass'n of Fire Chiefs, Inc., 782 F.2d 987, 989 -990 (Fed. Cir. 1986) (collecting cases). The court approaches the problem in a two-part analysis. The first question, identifying genus of goods or services at issue, is not disputed – the services are haircuts. In this case the focus is on the second step – whether the relevant public primarily understands "precision cuts" to refer to haircuts or haircut services. Id. It was the examiner's burden to establish, by "clear evidence," that the term "precision cut" was generic. Merrill Lynch, 828 F.2d at 1571; see also Trademark Manual of Examining Procedure § 1209.01(c)(i) (citing Merrill Lynch).

This court recently stated that "[a]ny competent source suffices to show the relevant purchasing public's understanding of a contested term, including purchaser testimony, consumer surveys, dictionary definitions, trade journals, newspapers and other publications." In re Dial-A-Mattress Operating Corp., 240 F.3d 1341, 1344-45 (Fed. Cir. 2001). Here, the examiner concluded that the returns to a NEXIS search on the term "precision cut" established a prima facie case that the term was generic for haircuts. Among more than sixty representative articles, from hundreds of search returns, "precision cut" or "precision cuts" were used to refer to a type of haircut (as in, "that kind of precision cut requires … very little styling", or "her specialty is the precision cut"), or a haircare service (as in, "precision cuts, weaves, up-dos", or "precision cuts and hair styling, permanents, hair relaxing, …"). Relying on this evidence, the Board affirmed, concluding that "the public would primarily understand the term 'precision

05-1024

- 4 -

cut(s)' to [identify a type or style of haircut] as a result of exposure to the uses of this term in the excerpts from newspapers and magazines distributed to the general public."

PCI argues this was not substantial evidence to support the finding that "precision cut(s)" was generic. First, PCI argues that the search returns, while numerous, were not numerous enough. Second, PCI argues that because "haircut" might have more common usage, "precision cut" cannot be generic. Third, PCI argues that the evidence only shows use of "precision cut(s)" by "haircare professionals, rather than the consuming public. We find none of these contentions convincing.

The quantum of evidence required is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." A reasonable person's credulity would be satiated by the hundreds of NEXIS search returns that the examiner, and the Board, relied upon to establish a prima facie case that the terms are generic. Neither the substantial evidence standard, nor the class of competent evidence under Dial-A-Mattress, require the PTO to administer consumer surveys to discharge its burden, and the absence of survey results from this record does not alter the sufficiency of the evidence.

PCI's second contention is likewise unconvincing. First, the attempt to compare the currency of "haircut" to "precision cut(s)" fails because PCI's evidence is not a matter of record. Second, even were the evidence in the record, it would not disturb the conclusion that "precision cut(s)" has generic usage for haircuts. Goods or services can have multiple generic descriptions. See Roselux Chem. Co. v. Parsons Ammonia Co., 299 F.2d 855, 860-61 (C.C.P.A. 1962) ("One common descriptive name of the product

05-1024
- 5 -

to which 'sudsy' is applied is 'detergent ammonia' but proof of this fact does not establish that 'sudsy ammonia' is not also a common descriptive name.").

PCI's final argument concerning the relevance of the Board's evidence misstates the record. First, various advertisements by haircare professionals included in the record are directed to the consuming public. Second, multiple references in the record lay in articles directed to the general public and discuss services provided by various barber shops or hair stylists. The Board did not rely solely on communications between practitioners in a trade, or uses drawn solely from trade journals.

In short, substantial evidence supports the Board's finding that "precision cut(s)" is a generic term for haircuts or haircut services. Because it is generic, the term cannot have secondary meaning under § 1052(f). See Merrill Lynch, 828 F.2d at 1569. PCI's evidence of secondary meaning is irrelevant.

As a result, the Board properly concluded that the term could not be registered. Because in such circumstances the Board can require the applicant to disclaim those portions of the proposed mark, there was no error in the Board affirming the examiner's final disclaimer requirement. See 15 U.S.C. § 1056(a) ("The Director may require the applicant to disclaim an unregistrable component of a mark otherwise registrable.").

III.

The decision of the Board is affirmed. Each side shall bear its own costs.