### In re THE BOSTON BEER COMPANY LIMITED PARTNERSHIP

No. 99–1123.

United States Court of Appeals, Federal Circuit.

Dec. 7, 1999.

Amy J. Benjamin, Darby & Darby, P.C., of New York, New York, argued for appel-

---

lant. With her on the brief were Ethan Horwitz and Karin Segall.

Thomas J. Finn, Associate Solicitor, Office of the Solicitor, of Arlington, Virginia, argued for appellee. With him on the brief were Albin F. Drost, Acting Solicitor, Nancy C. Slutter, and David R. Nicholson, Associate Solicitors. Of counsel was John M. Whealan, Acting Deputy Solicitor.

Before MAYER, Chief Judge, MICHEL and LOURIE, Circuit Judges.

MAYER, Chief Judge.

The Boston Beer Company Limited Partnership ("Boston Beer") appeals from a decision of the U.S. Patent and Trademark Office Trademark Trial and Appeal Board affirming the final rejection of trademark application Serial No. 74/464,-118 seeking to register "The Best Beer In America" on the principal register. *See In re Boston Beer Co. Partnership*, 47 USPQ2d 1914, 1998 WL 650077 (TTAB June 11, 1998). Because the board did not err in refusing to register the mark described in Boston Beer's application, we affirm.

## Background

On November 30, 1993, the Boston Beer Company filed an application to register "The Best Beer In America" on the principal register for "beverages, namely beer and ale," in Class 32. Boston Beer claimed use since 1985 and asserted that the words sought to be registered have acquired distinctiveness under 15 U.S.C. § 1052(f). Boston Beer claimed secondary meaning based on annual advertising expenditures in excess of ten million dollars and annual sales under the mark of approximately eighty-five million dollars. Specifically, Boston Beer spent about two million dollars on promotions and promotional items which included the phrase "The Best Beer in America."

In support of its claims, Boston Beer submitted an affidavit of its founder and co-president, James Koch, asserting that

the words sought to be registered had developed secondary meaning as a source-indicator for its goods by virtue of extensive promotion and sales of beer under the mark since June 1985. It also submitted an advertisement for a competitor's product, Rolling Rock Bock beer, which included an invitation to sample "the beer that bested 'The Best Beer in America,'" as evidence that Rolling Rock regards "The Best Beer in America" as Boston Beer's trademark. The examining attorney rejected the proposed mark as merely descriptive and cited articles retrieved from the NEXIS database showing the proposed mark used by Boston Beer and others as a laudatory phrase to refer to superior beers produced by a number of different brewers. All of the beers mentioned had either won comparison competitions or had been touted as the best in America by their makers or others. Boston Beer responded by submitting articles showing its use of the proposed mark to refer to its product and in promoting its beer as a winner of the annual beer competition in Denver. Additionally, it argued that if marks such as "Best Products" and "American Airlines" can be registered even though they are also used descriptively, then the proposed mark should be similarly registered. The examining attorney issued a final refusal to register under 15 U.S.C. § 1052(e)(1), holding that Boston Beer had failed to establish that the mark had become distinctive.

Boston Beer filed a notice of appeal and attached further exhibits to its appeal brief. The application was remanded to the examiner on his request for consideration of the new evidence. Another office action was issued denying registration for lack of distinctiveness which noted that the phrase sought to be registered was selected and used after Boston Beer received awards at the Great American Beer Festival. The board then allowed Boston Beer to file a supplemental brief. Action on the appeal was suspended and the board remanded the application.

The examiner concluded that the proposed mark is the name of a genus of goods, namely "beers brewed in America that have won taste competitions or were judged best in taste tests," and included printouts from the Boston Beer Internet web site to show that it had adopted the proposed mark after it had won such competitions. He therefore issued an office action rejecting the proposed mark as generic and thus incapable of registration. Boston Beer submitted a second supplemental brief to respond to the genericness rejection. After the examiner filed his appeal brief, Boston Beer filed a third supplemental brief arguing against genericness and moved to strike portions of the examiner's brief. Boston Beer argued that the examiner was limited to responding to the issues raised in the second supplemental brief, namely genericness, and could not address descriptiveness and acquired distinctiveness. Boston Beer argued that its proposed mark was not generic because there was no single category at the Great American Beer Festival and thus no "best beer in America" award. The board rejected the motion to strike.

The board found the proposed mark to be merely descriptive because it is only laudatory and "simply a claim of superiority, i.e., trade puffery." *In re Boston Beer*, 47 USPQ2d at 1919. The proposed mark was found not to be generic because the examiner's characterization of the genus or class of goods as "'beers brewed in America which have won taste competitions or were judged best in taste tests' stretches the limits of our language and is inconsistent with common usage." *Id.* at *19, 47 USPQ2d at 1919. The board held, however, that the proposed mark inherently cannot function as a trademark because such "claims of superiority should be freely available to all competitors in any given field to refer to their products or services." *Id.* at *24, 47 USPQ2d at 1920–21. Finally, the board said that "[e]ven if [it] were to find this expression to be capable of

identifying applicant's beer and distinguishing it from beer made or sold by others, [the board] also would find, in view of the very high degree of descriptiveness which inheres in these words, that applicant has failed to establish secondary meaning in them as an identification of source." *Id.* This appeal followed.

### Discussion

■■■ We review the board's legal conclusions, such as its interpretation of the Lanham Act, 15 U.S.C. § 1051–1127, *de novo.* We uphold the board's factual findings unless they are arbitrary, capricious, an abuse of discretion, or unsupported by substantial evidence. *See Dickinson v. Zurko,* 527 U.S. ——, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (scope of review of PTO's findings is subject to Administrative Procedure Act ("APA"), 5 U.S.C. § 706). We recognize that there are distinctions between the standards of review set out in the APA. In *Zurko,* the Supreme Court left undecided which standard, "arbitrary, capricious, abuse of discretion" or "substantial evidence," must be applied to review board findings. Because the board's present findings of fact would be upheld under any of the APA standards of review, it is unnecessary to make that determination here.

■■■ "Marks that are merely laudatory and descriptive of the alleged merit of a product are also regarded as being descriptive.... Self-laudatory or puffing marks are regarded as a condensed form of describing the character or quality of the goods." 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:17 (4th ed.1996) (internal quotations omitted). "If the mark is merely descriptive it may nevertheless acquire distinctiveness or secondary meaning and be registrable under Section 1052(f), although ... the greater the degree of descriptiveness the term has, the heavier the burden to prove it has attained secondary meaning." *In Re Bongrain Int'l (Am.) Corp.,* 894 F.2d 1316, 1317 n. 4, 13

USPQ2d 1727, 1728 n. 4 (Fed.Cir.1990) (internal quotations omitted). To acquire secondary meaning, section 1052(f) requires that the mark must have become "distinctive of the applicant's goods." 15 U.S.C. § 1052(f) (1994).

Boston Beer provided evidence of advertising expenditures, an affidavit from its co-president, and an advertisement from a competitor. It argues that the use of the mark by others was either referring to Boston Beer's products or merely descriptive of the goods of others and was not used as a trademark. This argument is unavailing. The examples of use of the phrase by others in its descriptive form support the board's conclusion that the mark had not acquired distinctiveness. Therefore, on the facts of this case, and considering the highly descriptive nature of the proposed mark, Boston Beer has not met its burden to show that the proposed mark has acquired secondary meaning.

■■■ Boston Beer does not dispute that "The Best Beer in America" is a generally laudatory phrase. We have held that laudation does not *per se* prevent a mark from being registrable. *See In re Bush Brothers & Co.,* 884 F.2d 569, 572, 12 USPQ2d 1058, 1060 (Fed.Cir.1989). As Boston Beer correctly notes, there is an assortment of generally laudatory terms that serve as trademarks. But that is not invariably true; the specific facts of the case control. *See, e.g., In re Duvernoy & Sons, Inc.,* 41 C.C.P.A. 856, 212 F.2d 202, 204, 101 USPQ 288, 289 (1954) (refusing registration on the principal register of "Consistently Superior" because distinctiveness under section 2(f) was not proved; the court also observed that the term is a laudatory statement of fact and is incapable of distinguishing the appellant's goods). As in this case, a phrase or slogan can be so highly laudatory and descriptive as to be incapable of acquiring distinctiveness as a trademark. The proposed mark is a common, laudatory advertising phrase which is merely descriptive of Boston Beer's goods. Indeed, it is so highly lau-

**1374**

datory and descriptive of the qualities of its product that the slogan does not and could not function as a trademark to distinguish Boston Beer's goods and serve as an indication of origin. The record shows that "The Best Beer in America" is a common phrase used descriptively by others before and concurrently with Boston Beer's use, and is nothing more than a claim of superiority. Because the board's conclusion of non-registrability is supported by substantial evidence is not arbitrary and capricious, and is not an abuse of discretion, we agree that "The Best Beer in America" is incapable of registration as a trademark.

### Conclusion

Accordingly, the decision of the board is affirmed.

*AFFIRMED*